IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, : | |
| : | CASE NO. 2:14-CR-127-8 |
| : | CASE NO. 2:15-CR-080-4 |
| Plaintiff, : | |
| : | CHIEF JUDGE ALGENON L. MARBLEY |
| v. : | |
| : | |
| DEOUNTE USSURY, : | |
| : | |
| Defendant. : | |

## OPINION & ORDER

This matter comes before this Court following a ruling by the Sixth Circuit vacating Defendant Deounte Ussury's conviction as to Count 11 in Case No. 2:14-cr-127 (008) and remanding the case for resentencing "solely for entry of judgment and consideration of whether resentencing on [his] remaining convictions is necessary." (ECF No. 1612 at 35). This Court asked the parties to brief the limited issue of whether resentencing on Defendant's remaining convictions is necessary. (ECF No. 1807). For the following reasons, this Court **VACATES** Count 11 of Defendant's conviction and **DENIES** Defendant's request for this Court to reconsider the sentences imposed on his other convictions. All other terms and conditions outlined in the March 17, 2017 Judgment and Commitment Order (ECF No. 1474) shall remain in full effect and force.

### I.  BACKGROUND

#### A.  Factual Background

In March 2017, as part of the Short North Posse cases, Ussury was convicted of: (1) Conspiracy to Participate in a Criminal Enterprise Through A Pattern of Racketeering Activity (Count 1 of case No. 2:14-cr-127(008)); (2) three Violent Crime in Aid of Racketeering (VCAR) murders (Counts 7 and 11 of case No. 2:14-cr-127, joined Count 1 of Case No. 2:15-cr-080 (004));

1

and (3) two counts of Murder Through the Use of a Firearm During and in Relation to a Drug Trafficking Crime (Count 8 of case No. 2:14-cr-127(008), joined Count 2 of case 2:15-cr-080(004)). (ECF Nos. 1474 at 1–2; 1813 at 2). At issue here is Count 11, Ussury's 2017 conviction for the murder of Dante Hill in aid of racketeering under 18 U.S.C. § 1959(a)(1). (ECF No. 1474).

At trial in 2016, Tabib Broomfield, a drug dealer and friend of Ussury's, testified that in December 2007 he called and asked Ussury to sell marijuana to Dante Hill because Broomfield had run out. (ECF Nos. 1555 at 10:1–5; 1612 at 20). Ussury agreed to go to Broomfield's home to meet Hill. (*Id.*). Hill's girlfriend, Casey Martin, accompanied Hill to Broomfield's house, but waited in the car while Hill went inside to purchase the marijuana. (*Id.*). Shortly thereafter, Martin observed Hill being chased back to the car by an unidentifiable man who then shot Hill. (*Id.*). Broomfield arrived home shortly after and found Hill bleeding on the driveway. (*Id.*). Broomfield also saw what he identified as Ussury's car drive away. (*Id.*). Surprised, Broomfield called Ussury who told Broomfield that "everything went bad" because Hill "was trying to do something to [Ussury]." (*Id.*). Broomfield later testified that he found Ussury's story unlikely because Hill was of a small stature compared to Ussury. (*Id.*)

Anthony Jones, another Short North Posse member, testified that Ussury later told a group of Short North Posse members that he tried to rob Hill earlier that day during the drug deal, but shot him when Hill reached for his gun. (*Id.*). Ussury asked them to help him hide the gun. (*Id.*). Another Short North Posse member, Troy Patterson, also testified that Ussury told him about a drug deal he had done at Broomfield's house, but "ended up, robbing him, shooting him, and killing him." (*Id.*). On June 9, 2016, a jury convicted Ussury of Hill's murder under the racketeering statute. (ECF No. 1813).

2

At sentencing, this Court found that the U.S. Probation Office properly calculated Ussury's total offense level to be 43 with a criminal history category of VI. (ECF No. 1555 at 4:6–8). This Court imposed a sentence of life imprisonment for all counts, with the life sentences for Count 8 and joined Count 2 to be served consecutively to each other and to Counts 1, 7, 11, and joined Count 1—in total, one term of concurrent life imprisonments with two consecutive life terms. (*Id.* at 15:7–16). This Court set the sentence to run concurrently with Ussury's then current term of imprisonment in the Federal Bureau of Prisons (Case No. 2:10-cr-323). (ECF No. 1555 at 15:17-20). Ussury also received a sentence of five years of supervised release. (*Id.* at 15:21-25). It should be noted that any offense under 18 U.S.C. § 1959(a)(1) that results in murder, requires a sentence of life imprisonment or death.

### B. Sixth Circuit Opinion and Remand

On appeal, Ussury challenged his conviction for Hill's murder (Count 11). Ussury argued there was insufficient evidence that he (1) murdered Hill, or (2) did so either—(i) in consideration for anything of pecuniary value from the enterprise or (ii) to gain entrance to or maintain or increase his position in the enterprise. (ECF No. 1612 at 21); 18 U.S.C. § 1959(a).

The Sixth Circuit held that "[a] rational juror could not, however, have found beyond a reasonable doubt that Ussury murdered Hill either for pecuniary gain *from* the Short North Posse or to boost his position within the gang." (ECF No. 1612 at 21) (emphasis in the original). The Court reasoned that "[w]hether Ussury planned to murder Hill from the start or resorted to murder only after the drug deal had gone bad, Ussury acted alone and without any apparent benefit to the Short North Posse." (*Id.*). First, the Court rejected the Government's argument that Ussury committed the murder under the "enterprise profits" theory of pecuniary-gain motivation. (*Id.* at 23). That theory requires the perpetrator of a violent crime to commit the crime in the course of

enterprise-related work so long as the person expects to profit from the overall affairs of the enterprise. (*Id.*). This robbery and murder, however, was conducted without the assistance or direction of the Short North Posse and targeted a small drug user, not rival dealer. (*Id.* 23–25). The Court reasoned that this was not the Short North Posse's typical robbery, nor did it contribute to the purpose of the group. (*Id.* 23–25). The Court also rejected the Government's positional motivation theory because Ussury did not commit the crime because it was expected of him nor in furtherance of his membership in the Short North Posse. (*Id.* at 24); *see also U.S. v. Concepcion*, 983 F. 2d 369, 381 (2d Cir. 1992). While Short North Posse members were expected to be violent, no evidence was presented that they were expected or encouraged to "unilaterally rob and murder low-level drug users who otherwise supported the gang by purchasing its drugs." (*Id.* at 23). Ussury happened to be in a gang but worked alone for the murder of Hill. (*Id.*). The Court concluded that to find evidence of racketeering in this scenario would convert the statue into a wide-sweeping "gang-status crime, punishing any and all violent crimes by gang members, no matter their relation to a racketeering enterprise." (*Id.* at 21). The Court vacated Ussury's conviction and sentence on Count 11 for Hill's murder, and the matter was remanded "solely for the entry of judgment and consideration of whether resentencing on their remaining convictions is necessary." (*Id.* at 37).

### C.  Government's Argument Against Resentencing

The Government argues that: (1) the Sixth Circuit mandate does not require resentencing of Ussury's other convictions and (2) resentencing is not necessary. (ECF No. 1814 at 3–6). The Government alleges that the Sixth Circuit's remand for this Court's "'consideration' whether resentencing on the other Counts was 'necessary,'" was "a particular type of limited remand." (*Id.* at 3). The Government maintains the decision only instructs this Court to consider resentencing, deferring to this Court as to whether resentencing is necessary. (*Id.*).

4

Further, the Government argues that resentencing is unnecessary because, like Count 11, Ussury also received concurrent life sentences on Counts 1, 7, and joined 1, and consecutive life sentences on Count 8 and joined Count 2. (*Id.* at 5). Counts 1 and 7 carry mandatory life sentences or death under 18 U.S.C. § 1959(a)(1). Therefore, the Government asserts that any resentencing would still result in mandatory life sentences on those counts and no actual change to Ussury's sentence. (*Id.*). Additionally, when Ussury was first sentenced in 2017, his Presentence Report (PSR) determined that he had a total offense level of 46 and a criminal history category VI. (ECF No. 1815 at 2). Under the U.S. Sentencing Guidelines, however, the maximum offense level an offender can receive is 43 (U.S.S.G. Ch. 5 Pt. A, n. 2), therefore, this Court concluded that the probation officer properly calculated the total offense level to be 43 with a criminal history category of VI. (ECF No. 1555 at 4:6–9). Following the Sixth Circuit's recent decision regarding Ussury's convictions, the Probation Office issued an addendum to the PSR stating that removing the vacated charge would lower Ussury's offense level to 45. (PSR Addendum at 1). Because this total offense level is still greater than the maximum of 43 and Ussury's other charges for murder were a total offense level of 43 and carried life sentences, the Government asserts that the Sentencing Guidelines still classify Ussury as a total offense level of 43 and criminal history of VI. (ECF No. 1815 at 2).

### D.  Ussury's Argument for Resentencing

Conversely, Ussury urges this Court to consider the effect of the vacated conviction and resentence Ussury. (ECF No. 1813 at 6). Ussury argues that the language used by the Sixth Circuit in their remand bespeaks a limited and general mandate. (*Id.* at 7). First, it directs this Court to vacate Ussury's judgment on Count 11. (*Id.*). It also provides for a general remand which permits this Court to resentence Ussury *de novo*. (*Id.* at 3); *see also U.S. v. Orlando*, 363 F.3d 596, 601

(6th Cir. 2004); *U.S. v. Duso*, 42 F.3d 365, 368 ("If the defendant convinces the court on appeal that the sentence was wrongly computed and the court remands for resentencing, there appears to be no prohibition in the guidelines, or in the case law interpreting the guidelines, keeping a district judge from revisiting the entire sentencing procedure unless restricted by the remand order."). Ussury also asserts that the "law of the case doctrine" which "proposes that when a court decides an issue, that decision should continue to govern . . . in subsequent stages" (*Arizona v. California*, 460 U.S. 605, 618 (1983)), does not foreclose a court from "reconsidering issues in a case previously decided by the same court or another court." (ECF No. 1813 at 4 citing *U.S. v. Todd*, 920 F.2d 399, 403 (6th Cir. 1990)). Ussury contends that the Sixth Circuit's directive requires this Court to reconsider how vacating Count 11 would impact Ussury's overall sentence and review how this change impacts application of the U.S. Sentencing Guidelines and the 18 U.S.C. § 3553(a) factors considered in Ussury's original sentence. (ECF No. 1813 at 7). He asserts that his conviction on Count 11 "clearly factored into the calculation of the Total Offense Level and resulting Guideline range of sentencing" in Ussury's original sentence and "weighed heavily in this Court's consideration of section 3553(A) factors." (*Id.*).

## II. LAW & ANALYSIS

### A. Interpreting the Sixth Circuit's Mandate

Under mandate rules, "remands can be either general or limited in scope; limited remands explicitly outline the issues to be addressed by the district court and create a narrow framework within which the district court must operate, and general remands give the district court authority to address all matters as long as remaining consistent with remand." *U.S. v. United Technologies Corp.*, 190 F. Supp. 3d 752, 757 (S.D. Ohio 2016) (citing *U.S. v. Campbell*, 168 F. 3d 263, 265 (6th Cir. 1999)). Absent "express language in the mandate itself delimiting the precise issues to be

considered on remand, the mandate is presumed to be a general mandate." *Id.* (citing *U.S. v. Moore*, 131 F. 3d 595, 598 (6th Cir. 1997). On remands related to sentencing, a general remand allows the district court to "resentence [the] defendant de novo; however, on limited remand, [the] district court's authority is constrained to the issue or issues remanded." *U.S. v. Orlando*, 363 F. 3d 596, 601 (6th Cir. 2004). The Sixth Circuit remanded this matter to this Court "solely for the entry of judgment and consideration of whether resentencing on [his] remaining convictions is necessary," which can be interpreted as both a limited and general mandate. (ECF No. 1612 at 35). Limited in the sense that this Court must vacate Ussury's conviction for Count 11, but general in the sense that the Sixth Circuit explicitly gave this Court the discretion to *consider* whether resentencing is appropriate on Ussury's other charges. (*Id.*) (emphasis added).

While the Sixth Circuit's language on remand undoubtedly gives this Court a general mandate to reassess Ussury's sentence for his remaining convictions, such a reassessment is unnecessary and futile. Count 7 of Ussury's original sentence, for the murder of Marcus Peters in aid of racketeering under 18 U.S.C. § 1959(a)(1), statutorily requires a sentence of life imprisonment or death. (ECF No. 1141 at 15). For Count 7 alone, this Court sentenced Ussury to life imprisonment—a conviction that still stands and a sentence that this Court can in no way lessen. (ECF No. 1555 at 15:7–16). Ussury was also convicted of Count 8 for the murder of Marcus Peters through the Use of a Firearm During and in Relation to a Drug Trafficking Crime under 18 U.S.C. §§ 924(c), 924(j)(1). (ECF No. 1474 at 2-3). If a murder occurs during and in relation to a drug trafficking crime, it shall be "punished by death or by imprisonment for any term of years or for life." 18 U.S.C. § 924(j)(1). Additionally, if a violation of § 924 results in murder, the sentence imposed must run consecutively to any other term of imprisonment imposed on the individual. 18

U.S.C. § 924(c)(1)(D)(ii). As such, this Court sentenced Ussury to life imprisonment for both Count 8 and joined Count 2 to run consecutively to the life sentence imposed for Count 7.

Again, even if this Court were to reconsider Ussury's sentences under Count 8 and joined Count 2, for the murders through use of a firearm in relation to a drug trafficking crime of Deonte Hill and Marcus Peters, where it has discretion to impose a lesser term of imprisonment than life, this Court is still statutorily required to maintain the life sentence concurrently imposed on Ussury for Count 7. Prior to the Sixth Circuit's decision, the life sentences for both Count 7 and Count 11 ran concurrently, and the life sentence for Count 7 remains. Further, even though the Sixth Circuit found that Ussury could not be found guilty of murder in aid of racketeering of Hill, such a finding has no impact on the fact that Ussury was found guilty of Hill's murder, even if it was not in furtherance of the Short North Posse's mission. In summary, Ussury must still serve at least one life sentence for Count 7 despite the Sixth Circuit's decision to vacate Count 11. (ECF No. 1612 at 35).

### B. Resentencing Hearing Requirement

In *U.S. v. Flack*, the Sixth Circuit remanded a 28 U.S.C § 2255 appeal, giving the district court discretion to vacate the plaintiff's convictions or conduct a resentencing hearing. 941 F. 3d 238, 240 (6th Cir. 2019). The district court decided not to conduct a resentencing hearing because the 18 U.S.C. § 3553(a)[1] factors were accounted for in the existing sentence, which it enumerated in its order. *Id.* at 241. On further appeal, distinguishing between a court correcting[2] a sentence

---

[1] A court must take into consideration the following during sentencing: (1) the nature and circumstances of the offense and the defendant's history and characteristics; (2) the need for the sentence imposed to reflect the seriousness of the offense; (3) the need to protect the public from further crimes of the defendant; (4) the sentencing guideline range; and (5) the need to avoid unwarranted sentencing disparities among defendants with similar records guilty of similar conduct. 18 U.S.C. § 3553(a).

[2] The Sixth Circuit explained that a district court corrects a sentence "when its action is arithmetical, technical, or mechanical." *Flack*, 941 F.3d at 241. Examples include: (1) when a court "cuts back to the statutory maximum a sentence that had exceeded it," or (2) when a court "mechanically vacate[s] . . . unlawful convictions (and accompanying sentences.)" *Id.*

8

and resentencing a defendant, the Sixth Circuit concluded that consideration of the § 3553(a) factors "amounted to a resentencing of Flack rather than to a correction of his sentence." *Id.* Therefore, the court should have held a sentencing hearing at which it could "announce the reasons for the sentence 'in open court.'" *Id.* (quoting Fed R. Crim. P. 43(a); 18 U.S.C. § 3553(c)).

The situation at issue in *Flack*, however, is not present here. As previously explained, resentencing Ussury's remaining Counts is unnecessary; therefore, this Court is not required to reevaluate the § 3553 factors. *See U.S. v. Augustin*, 16 F. 4th 227, 233 (6th Cir. 2021) (concluding that no resentencing hearing was required where the district court imposed a corrected sentence but did not "exercise any new or significant discretion" and "never reevaluated 'the appropriateness of the defendant's original sentence' or reconsidered the § 3553(a) factors from scratch"). Given this Court's limited ability practically to alter Ussury's existing sentence, an order vacating Count 11 and denying resentencing without assessing the § 3553(a) factors is appropriate.

### III.  CONCLUSION

For the reasons stated above, this Court **VACATES** Count 11 of Ussury's prior conviction and **DENIES** Ussury's request for this Court to reconsider the sentences imposed on his other convictions. (ECF No. 1813 at 6).  All other terms and conditions outlined in the March 17, 2017 Judgment and Commitment Order (ECF No. 1474) shall remain in full effect and force.

**IT IS SO ORDERED.**

_____
**ALGENON L. MARBLEY
CHIEF UNITED STATES DISTRICT JUDGE**

**DATED:  January 6, 2023**